UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JENNIFER PIERNIK and JESSICA TRESSLER, | § § § | No. 5:17–CV–320–DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| COLLECTION MANAGEMENT COMPANY, d/b/a CMC—CREDIT MANAGEMENT COMPANY, | § § § § | |
| Defendant. | § § | |

ORDER (1) GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE
(DKT. # 7); AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO
DISMISS (DKT. # 7) AND MOTION TO STAY DISCOVERY (DKT. # 17)

Before the Court are two motions filed by Defendant Collection

Management Company, d/b/a CMC—Credit Management Company ("Defendant"

or "CMC"): (1) a Motion to Dismiss and Alternative Motion to Transfer Venue

(Dkts. ## 7, 12); and (2) a Motion to Stay Discovery (Dkt. # 17).  Pursuant to

Local Rule CV-7(h), the Court finds these matters suitable for disposition without

a hearing.  After careful consideration of the memoranda filed in support of and in

opposition to the motions, the Court—for the reasons that follow—**GRANTS**

Defendant's Alternative Motion to Transfer Venue (Dkt. # 7); and **DENIES AS**

**MOOT** Defendant's Motion to Dismiss (id.) and Motion to Stay Discovery (Dkt.

# 17).

1

## BACKGROUND[1]

Defendant is a Pennsylvania corporation that is in the business of collecting debts. (Dkt. # 1 at 1–2, 7.) At various times between 2015 and 2016, Defendant placed numerous phone calls to Gwendylyn Riley ("Riley"), Kiki Ball ("Ball"), Raymond Collins ("Collins"), Jennifer Piernik ("Piernik"), and Jessica Tressler ("Tressler") (collectively, "Original Plaintiffs") on their individual cell phones, attempting to collect debts they allegedly owed. (Id. at 8.) The phone calls—approximately 200 phone calls when combined—originated from three different phone numbers: (1) a San Antonio phone number, (210) 579-0035; (2) a Los Angeles, California phone number, (213) 265-3000; and (3) a toll free number, (866) 368-1565. (Id. at 2, 10–17.) All three phone numbers are allegedly associated with Defendant. (Id. at 10–13.)

When Original Plaintiffs answered each phone call from Defendant, they heard "dead air" before a live representative came on the line. (Id. at 10–15.) At some point during the phone call, they also heard an artificial or prerecorded voice message. (Id.) Original Plaintiffs did not consent to receive these calls, and the calls persisted despite Original Plaintiffs' requests for them to stop. (Dkt.

.

---

[1] The Court accepts the allegations in the complaint as true for purposes of this order. See Wood v. Moss, 134 S. Ct. 2056, 2067 (2014).

# 1 at 7.)  Further, according to Original Plaintiffs, their respective cell phone carriers charged them for each call they received from Defendant.  (Id. at 10–15.)

On April 12, 2017, Original Plaintiffs filed the instant suit against Defendant under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (the "TCPA").  (Dkt. # 1.)  Original Plaintiffs' operative complaint asserts two TCPA claims against Defendant: (1) negligent violation of the TCPA; and (2) knowing or willful violation of the TCPA.  (Id. at 16.)

On June 5, 2017, Riley, Ball, and Collins voluntarily dismissed their claims against Defendant.  (Dkt. # 6.)  Thus, Piernik and Tressler, who were joined in this action under Rule 20 of the Federal Rules of Civil Procedure, are the only Plaintiffs that remain in this action.  (Dkt. # 1 at 2, 6–7.)

On June 6, 2017, Defendant filed the instant motion to dismiss.[2] (Dkts. ## 7, 12.)  In its motion, Defendant requests that the Court dismiss Piernik's and Tressler's TCPA claims pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  (Dkts. ## 7, 12.)  Alternatively, assuming the Court finds that venue in this district is proper, Defendant requests that the Court transfer venue to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). (Dkts. ## 7, 12.)

---

[2] Although the instant motion to dismiss was initially filed on June 6, 2017 (Dkt. # 7), Defendant moved to amend its motion on June 29, 2017 (Dkt. # 10), which this Court subsequently granted (Dkt. # 11).

Plaintiffs timely filed a response in opposition to the motion (Dkt. # 13),[3] and

Defendant filed a reply (Dkt. # 16).

On August 8, 2017, Defendant filed a Motion to Stay Discovery (Dkt.

# 17), to which Plaintiffs timely filed a response in opposition.  (Dkt. # 18.)

Defendant did not file a reply and the time for filing a reply has passed.  See Local

Rule CV-7(f).

LEGAL STANDARD

A party may move to dismiss a claim for improper venue pursuant to

Federal Rule of Civil Procedure 12(b)(3).  See Fed. R. Civ. P. 12(b)(3).  Once a

defendant challenges venue, "the plaintiffs have the burden to prove that the

chosen venue is proper."  EnviroGLAS Prod., Inc. v. EnviroGLAS Prod., LLC,

705 F. Supp. 2d 560, 567 (N.D. Tex. 2010).  "However, in the absence of an

evidentiary hearing, a court should allow a plaintiff to carry this burden based upon

setting forth facts that taken as true would establish venue."  McCaskey v. Cont'l

Airlines, Inc., 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).  "The court should,

therefore, accept uncontroverted facts contained in plaintiff's complaint as true and

resolve conflicts in the parties' affidavits in the plaintiff's favor."  Id.  "Thus, while

a defendant need not affirmatively disprove all bases for the plaintiff's venue

---

[3] Plaintiffs filed their response on July 10, 2017 (Dkt. # 13), seven days after the
Court granted Defendant leave to amend the instant motion (Dkt. # 11).

choice, the court will nevertheless give plaintiff every benefit of doubt in ascertaining what facts control its legal decision." Bigham v. Envirocare of Utah, Inc., 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000).

For actions based on federal question jurisdiction, 28 U.S.C. § 1391(b) provides that venue is proper in:

> (1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)   a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)   if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3). If the case falls within one of these provisions, venue is proper; if it does not, venue is improper. Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex., 134 S. Ct. 568, 577 (2013). If venue is proper, 28 U.S.C. § 1404(a) permits district courts to transfer the case for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a); In re Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) ("Volkswagen II"). Alternatively, if venue is improper, 28 U.S.C. § 1406(a) instructs district courts to "dismiss, or if it [is] in the interest of justice, transfer such case to any district or

division in which it could have been brought." 28 U.S.C. § 1406(a); <u>Atlantic</u>

<u>Marine Const. Co., Inc.</u>, 134 S. Ct. at 577. The decision to dismiss or transfer lies

within the court's discretion. <u>AllChem Perf. Prods., Inc. v. Aqualine Warehouse,</u>

<u>LLC</u>, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012) (citing <u>Dubin v. United States</u>,

380 F.2d 813, 815 (5th Cir. 1967)).

DISCUSSION

I.   <u>Timeliness of Defendant's Motion to Dismiss</u>

Defendant moves to dismiss the Complaint based on improper venue

under Rule 12(b)(3) of the Federal Rules of Civil Procedure. (Dkts. ## 7, 12.)

However, Defendant waived the defense of improper venue under Rule 12(a) of the

Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 12(h)(1) states that "[a] party waives

any defense listed in Rule 12(b)(2)–(5) by . . . (B) failing to either: (i) make it by

motion under [Rule 12]; or (ii) include it in a responsive pleading or in an

amendment allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ.

P. 12(h)(1). Rule 12 prescribes a 21-day deadline in which a defendant must serve

an answer or motion to dismiss pursuant to Rule 12(b). <u>See</u> Fed. R. Civ. P.

12(a)(1)(A) (stating that "[a] defendant must serve an answer[] within 21 days after

being served with the summons and complaint" unless service has been waived);

<u>Hines v. Delta Air Lines, Inc.</u>, 461 F.2d 576, 579 n.13 (5th Cir. 1972) (noting that

6

the requirements of Rule 12(a) apply through Rule 12(h)(2) and Rule 7(a));

see also Charboneau v. Box, No. 4:13-CV-678, 2017 WL 1159765, at *13 (E.D.

Tex. Mar. 29, 2017), *appeal dismissed sub nom.* Charboneau v. Davis, No.

17-40462, 2017 WL 5157743 (5th Cir. June 1, 2017) (noting that "[Rule]

12 prescribes a twenty-one-day period in which a defendant must serve [an answer

or Rule 12(b) motion in response] to a plaintiff's summons or complaint.  The

clock begins to run on this period when the defendant receives the summons and/or

complaint.") (citations omitted); Hydradyne, LLC v. McCurdy, No.

2:13-CV-748-JRG, 2013 WL 12134083, at *1 (E.D. Tex. Dec. 3, 2013).

Defendant was served with the summons on May 2, 2017,[4] and there

is no evidence that Defendant waived service in this case.  (Dkt. # 5.)  Defendant

was therefore required to file its motion to dismiss or other responsive pleading by

May 23, 2017.  See Fed. R. Civ. P. 12(a)(1)(A).  Since Defendant's Rule

12(b) motion was filed on June 6, 2017, fourteen days after the May 23,

2017 deadline, the motion is untimely filed.  See Hydradyne, LLC, 2013 WL

12134083, at *2 (finding a motion to dismiss for, *inter alia*, improper venue to be

---

[4] The summons provided: "Within 21 days after service of this summons on you
(not counting the day you received it) . . . you must serve on the plaintiff an answer
to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil
Procedure."  (Dkt. # 5.)  Further, the Court's docket plainly set forth the answer
deadline as calculated under Rule 12(a) to avoid confusion and for the convenience
of the parties.  (Id.)

untimely when filed after the 21-day deadline set forth in Rule 12(a)).  Because

Defendant did not timely file its Rule 12(b)(3) motion, the Court finds that

Defendant has waived this defense.

II.     Defendant's Motion to Transfer Venue

        Defendant moves in the alternative to transfer venue to the Western

District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).  (Dkt. # 7; Dkt. # 12 at

4–6.)  Section 1404(a) states that "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought or to any district or division

to which all parties have consented."  28 U.S.C. § 1404(a).  To obtain a new

federal venue under Section 1404, the moving party must show "good cause"; that

is, the moving party "must satisfy the statutory requirements and clearly

demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the

interest of justice.'"  Volkswagen II, 545 F.3d at 315 (quoting 28 U.S.C. § 1404(a)).

        "The preliminary question under [Section] 1404(a) is whether a civil

action 'might have been brought' in the destination venue."  Id. at 312.  If the

action could have been brought in the destination venue, the court considers

whether the transfer would be more convenient for the parties and witnesses.  Id.

"When the movant demonstrates that the transferee venue is clearly more

convenient" the district court should grant the transfer.  Id. at 314.  However,

8

"when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." Id.

The moving party has the burden to show that the transferee venue is clearly more convenient for the parties and witness. See id. ("[H]e who seeks the transfer must show good cause."). A moving party can establish this burden by demonstrating, through various private and public interest factors, that the transferee venue is clearly more convenient. Volkswagen II, 545 F.3d at 314. The private factors that courts should consider when determining whether transfer is proper under Section 1404(a) include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." Id. at 203.

9

A.    Threshold Inquiry

Plaintiffs do not dispute that this case could have been brought in the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(1).  (Dkt. # 13.)  CMC is headquartered in Pittsburgh, Pennsylvania.  (Dkt. # 1.)  Because Pittsburgh is within the Western District of Pennsylvania, this suit could have been brought in the proposed transferee court.  28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]").

B.    Convenience of the Parties and Witnesses

Since the proposed transferee district is one in which the suit may have been brought, see 28 U.S.C. § 1391(b)(1), the next consideration is "the convenience of the parties and witnesses."  Volkswagen I, 371 F.3d at 203; Volkswagen II, 545 F.3d at 315.  In determining whether transfer is proper under 28 U.S.C. § 1404(a), the Court considers the private and public interest factors noted *infra*.

1.    Private Interest Factors

The Court has carefully considered the private interest factors and finds—for the reasons stated below— that the private interest factors weigh in favor of transfer.

10

i.   Ease of Access to Sources of Proof

The first private interest factor considers the "relative ease of access to sources of proof." Volkswagen I, 371 F.3d at 203.  Defendant contends that the evidence in this case is more easily accessible in Pennsylvania, since "all of CMC's records related to [Piernik and Tressler] . . . are located in Pittsburgh, P[ennsylvania]." (Dkt. # 12 at 5.)  Plaintiffs counter that this claim is "superficial" because virtually all the evidence is readily convertible to an electronic medium. (See Dkt. # 13 at 4.)

It is undisputed that the sources of proof originate from Pennsylvania, where CMC is headquartered and Plaintiffs reside.  (Dkt. # 12 at 5; Dkt. # 13.) While Plaintiffs argue that the sources of proof may be accessed as easily in Texas as in Pennsylvania, the Fifth Circuit has previously rejected this argument, stating the sources of proof requirement is a meaningful factor in the analysis despite the advent of recent technology.  See Volkswagen II, 545 F.3d at 315.  While "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments," the advent of technology does not render the sources of proof factor superfluous.  Id. at 316.  Because all sources of proof are in the Western District of Pennsylvania and there are no sources of proof, other than electronically, in the Western District of Texas, the Court finds that this factor weighs in favor of transfer to the Western District of Pennsylvania.

11

ii.   Availability of Compulsory Process

The second private interest factor is the availability of compulsory process to secure witnesses. Volkswagen I, 371 F.3d at 203. This factor applies only to non-party witnesses. Vargas v. Seamar Divers Intern., LLC, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011). Employees of a party are considered party witnesses, as opposed to non-party witnesses. Id. This is because the employees "can be presumed to appear willingly on behalf of their party employer." Id.; see Dupre v. Spanier Marine Corp., 810 F. Supp. 823, 825 (S.D. Tex. 1993) ("[When] key witnesses are the employees of the moving party . . . the moving party can compel those witnesses to attend the trial.").

The only witnesses the parties have identified are employees of CMC. (See Dkt. # 12.) Because CMC's employees are considered party witnesses, this factor does not apply. The second private interest factor is therefore neutral.

iii.   Cost of Attendance of Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. Volkswagen I, 371 F.3d at 203; see Coleman v. Trican Well Serv., L.P., 89 F. Supp. 3d 876, 884 (W.D. Tex. 2015) (noting that the proper consideration for this factor is the "cost of attendance for willing witness"). In considering this factor, "[t]he Court must consider the convenience of both the party and non-party

12

witnesses." Vargas, 2011 WL 1980001, at *7 (citing Volkswagen I, 371 F.3d at 204 (requiring courts to "contemplate consideration of the parties and witnesses")).

The Fifth Circuit employs a 100-mile rule to assess the third private interest factor of cost of attendance for willing witnesses. Volkswagen I, 371 F.3d at 204–05.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." Id.  "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travels time with overnight stays increases the time which these fact witnesses must be away from their regular employment." Id. at 205.  Because the distance between the Western District of Texas and Western District of Pennsylvania is over 100 miles, the Court must consider the relative inconvenience for witnesses to travel to Pittsburgh versus San Antonio. See DSCH Capital Partners, LLC v. Hypower, Inc., No. 1:14-CV-348-DAE, 2015 WL 2151833, at *5 (W.D. Tex. May 7, 2015).

Defendant states that "any corporate representative it may designate for purposes of a deposition or trial" is located in Pittsburgh, Pennsylvania.  (Dkt. # 12 at 5.)  Defendant argues that because CMC's headquarters are in Pittsburgh, and its employee-witnesses are located in Pennsylvania, transfer will reduce

13

overall time and financial costs to its corporate witnesses and representatives.  (Id.)
Piernik and Tressler, both of whom reside in Pennsylvania, do not dispute that
traveling to the federal courthouse in Pittsburgh would be more convenient for
them.  (See Dkt. # 1; Dkt. # 13.)  Further, Plaintiffs have not identified any
witnesses who would be inconvenienced if the case was transferred to the Western
District of Pennsylvania, nor have Plaintiffs identified how keeping the
proceedings in the Western District of Texas would be more convenient.  (See Dkt.
# 13.)

    Because Plaintiffs and the employee-witnesses all reside in
Pennsylvania, they would need to travel approximately 1,500 miles to attend trial
in San Antonio.[5]  Given this distance and added cost to the witnesses and parties in
this case, the Western District of Pennsylvania is clearly more convenient for the
parties and employee-witnesses in this case.  Accordingly, the Court finds that this
factor weighs in favor of transferring the case to the Western District of
Pennsylvania.  See Berlanga v. Basic Energy Servs., LP, No. 3:17-CV-0106-L,
2017 WL 4923876, at *3 (N.D. Tex. Oct. 30, 2017) (finding that the third factor
favored transfer because it was "less time-consuming and costly for the

---

[5] The only person the parties identified who would need to travel from Texas to
Pennsylvania is Plaintiffs' counsel.  (Dkt. # 12 at 4.)  However, "[i]t is improper for
the court to consider the convenience of counsel" in its venue analysis.  AllChem
Perf. Prod., Inc., 878 F. Supp. 2d at 788 n.12.  The location of counsel is therefore
irrelevant and the Court will not consider it.

[employee-witnesses] to attend trial during the work day at the courthouse in the

Fort Worth Division, [the transferee court], which [wa]s nearer to their work

locations"); Coleman, 89 F. Supp. 3d at 884 (concluding that the third factor

weighed in favor of transfer because it was "more convenient (and less costly) for

more witnesses to have the trial held in the [transferee court]").

>           iv.    All Other Practical Problems

Finally, the Court must consider all other practical problems that make

trial of a case easy, expeditious, and inexpensive.  See Volkswagen I, 371 F.3d at

203.  Plaintiffs assert that this factor militates against transfer because their counsel

is located in Texas, albeit in the Southern District of Texas.  (See Dkt. # 13.)

Plaintiffs explain that having to "procur[e] counsel to proceed in a new

jurisdiction" would be difficult and expensive.  (Id. at 4.)  In that regard, Plaintiffs

suggest that the Court consider the location of counsel in its venue analysis.

However, the Fifth Circuit has held that the location of counsel is "irrelevant and

improper for consideration in determining the question of transfer of venue."  In re

Horseshoe Entm't, 337 F.3d 429, 434 (5th Cir. 2003); see also Volkswagen I,

371 F.3d at 206 (holding that the district court "reversibly erred in

considering . . . that counsel for both parties are located in Dallas, Texas.").

Therefore, the Court will not consider the location of counsel in evaluating a venue

transfer.

In a similar vein, Plaintiffs claim without any analysis that the Court should take into consideration the "relative means of the parties" when "an economic disparity exists between the parties, such as an individual plaintiff suing a large corporation."[6]  (Dkt. # 13 at 5.)  Similarly, as noted *supra*, Defendant asserts that it will incur substantial costs if its employee-witnesses have to travel to San Antonio for depositions and trial.  (Dkt. # 12.)  Thus, both parties claim the other's choice of forum will cause financial hardship.  Based on the pleadings, the Court is unable to determine the financial hardship each party will bear. Accordingly, the Court concludes this factor is neutral.  See Coleman, 89 F. Supp. 3d at 884 (concluding that the fourth private interest factor was neutral where plaintiff argued that the court should consider the "relative financial strengths of the parties"; the pleadings did not allege enough facts to determine the financial hardship of the parties and the plaintiff provided no information about why travel to the transferee forum would cause financial hardship).

Plaintiffs also argue that transferring venue to the Western District of Pennsylvania may upend their ability to collect damages in this case, stating that "granting [Defendant's] Motion to transfer will impair Plaintiffs' ability to maintain the lawsuit given the disproportionate expense such transfer would

---

[6] Other than pointing out that they are "individuals," as opposed corporations, Plaintiffs provided no information about why travel to the Western District of Pennsylvania would cause financial hardship.  (See Dkt. # 13.)

impose and the dim prospect of maintaining a contingent-fee, TCPA lawsuit in a new, out-of-state jurisdiction." (Dkt. # 13 at 6.) Further, Plaintiffs state that "[t]he TCPA has no fee shifting provision, and in the absence of Joinder, some [of Piernik's and Tressler's claims] will simply never be vindicated as a practical matter." (Id.) Plaintiffs do not elaborate on these assertions. Rather, Plaintiffs leave it to the Court to flesh out their conclusory claims. The Court, however, declines such task. See Coggin v. Longview Indep. Sch. Dist., 337 F.3d 459, 468 n.1 (5th Cir. 2003) (citing Enplanar, Inc. v. Marsh, 11 F.3d 1284, 1296 n.16 (5th Cir. 1994) ("Judges are not like pigs, hunting for truffles buried in briefs."))).

Finally, Plaintiffs vaguely argue that the Court should consider their choice of forum. (See Dkt. # 13.) "[I]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." In re Horseshoe Entm't, 337 F.3d at 434. Although a plaintiff's choice of forum is generally entitled to deference, it has reduced significance when the plaintiff files suit outside his or her home district. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'") (quoting

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255–56 (1981)); Bennett v. Moran

Towing Towing Corp., 181 F. Supp. 3d 393, 397 (S.D. Tex. 2016) ("Generally, the

plaintiff's venue choice is accorded deference, but 'when [he] files suit outside

[his] home forum, the weight accorded to the choice is diminished.'") (quoting

Sivertson v. Clinton, No. 3:11–cv–0836–D, 2011 WL 4100958, at *4 (N.D. Tex.

Sept. 14, 2011)).

Piernik and Tressler are residents of Pennsylvania, not Texas.  (Dkt.

# 1 at 2.)  Accordingly, the decision to file their claims in the Western District of

Texas is entitled to less deference.  See Sinochem Int'l Co., 549 U.S. at 430.  The

deference given to Plaintiffs' choice of forum is further reduced by the fact that

Riley, Ball, and Collins are no longer plaintiffs in this case (see Dkt. # 7).  See

Amini Innovation Corp. v. Bank & Estate Liquidators, Inc., 512 F. Supp. 2d 1039,

1045 (S.D. Tex. 2007) (stating that "shortly after [the plaintiff] amended its

complaint . . . [the] plaintiff settled with the [defendants]," which rendered the

plaintiff's "choice of forum much less significant").  The Court therefore finds that

Plaintiffs' choice of forum weighs only slightly against transfer.

In light of the foregoing, the Court concludes that, on balance, the

private interest factors weigh in favor of transfer.

2.     Public Interest Factors

Turning to the public interest factors, the Court finds—for the reasons stated below— that the public interest factors weigh in favor of transfer.

i.     Administrative Difficulties of Court Congestion

The first public interest factor considers the administrative difficulties created by court congestion.  Volkswagen I, 371 F.3d at 203.  In that regard, Defendant claims transfer of venue is proper because it would not significantly delay the trial date (Dkt. # 12), which has not been set in this case.  In support, Defendant cites the most recent Federal Judicial Caseload Statistics regarding the rate of disposition in the Western District of Texas and Western District of Pennsylvania.  (Id. at 5.)  Defendant argues that the statistics indicate that cases in the Western District of Pennsylvania reach disposition as quickly as, or more quickly than, cases in the Western District of Texas—6.4 months from filing to disposition in the Western District of Pennsylvania as opposed to 6.6 months in the Western District of Texas.  (Id.)  Plaintiffs do not challenge the statistics or claim that the transfer will delay the disposition of this case.  Instead, Plaintiffs argue that transferring this case to Western District of Pennsylvania may "gut [their] claim[s] or extripate [sic] [them] in [their] entirety."[7]  (Dkt. # 13 at 4.)  Plaintiffs explain

---

[7] In their response, Plaintiffs also state that the parties are in settlement negotiations and suggest that transferring this case may impede a settlement.  (Dkt. # 13 at 4.)  Defendant, however, refutes this remark, stating, "[f]or the record, there

that the total number of calls between Piernik and Tressler (*i.e.,* less than 30),

which form the basis of the Complaint, may "not justify the expense . . . of

procuring counsel to proceed in a new jurisdiction," noting that the TCPA does not

permit attorney fee-shifting.  (Id. at 4–5.)  Defendant argues that, "[t]o the extent

[Plaintiffs] are concerned that transfer from the Western District of Texas will leave

them without legal representation, their attorneys have served as counsel to

numerous plaintiffs in Pennsylvania's federal courts."  (Dkt. # 16 at 4.)  In support,

Defendant cites the following cases wherein Plaintiffs' counsel has represented

parties in federal Pennsylvania courts: Johnson v. Ally Financial Inc.,

1:16-cv-01100-CCC (M.D. Pa.); Richardson et al v. Verde Energy USA, Inc.,

5:15-cv-06325-LS (E.D. Pa.); Miles v. Professional Account Services, Inc.,

2:16-cv-02779-SD (E.D. Pa.).[8]  (Id. at 4.)

> In its Section 1404(a) analysis, the court may consider how quickly a

case will come to trial and be resolved.  See Volkswagen I, 371 F.3d at 203.  While

---

is no pending settlement."  (Dkt. # 16 at 4.)  Based on the pleadings and status of
this case, it does not appear that a settlement is likely to be reached in this case.
The instant case has been pending for approximately ten months, and since the
parties filed the instant briefings over six months ago, the parties have yet to reach
a settlement.  (Dkts. ## 1, 7, 12, 13, 16.)

[8] Plaintiffs are represented in this case by Bryant A. Fitts, Esq., Jarrett Lee Ellzey,
Esq. and W. Craft Hughes, Esq.  Jarrett Lee Ellzey, Esq. is listed as the plaintiffs'
attorney of record in all three Pennsylvania cases cited by Defendant, and W. Craft
Hughes, Esq. is listed as co-counsel in at least one those cases.  (Dkt. # 16 at 4.)

this case has been pending for nearly ten months, it has not been set for trial and

the parties have indicated that they have exchanged very little discovery.

(See Dkts. ## 17, 18.)  Given that the Western District of Pennsylvania reaches

disposition as quickly as, if not more quickly than, the Western District of Texas,

the Court finds that should this case now be transferred, the case would likely

resume along a similar or more expedient timeline.  For these and other reasons,

the Court finds that this factor weighs in favor of transfer.[9]

        ii.    Local Interest

        The second public interest factor is the local interest in having

localized interests decided at home.  Volkswagen I, 371 F.3d at 203.  Defendant

argues that the Western District of Pennsylvania has a substantial connection to and

interest in the adjudication of this case.  (Dkt. # 12 at 6.)  Specifically, Defendant

claims that the Western District of Pennsylvania has a significant localized interest

in this case because CMC is a Pennsylvania corporation and the State of

Pennsylvania has a "vested interest in determining the outcome of this case . . . to

protect its citizens from potential violations of consumer protection laws."  (Id.)

Defendant also contends that this District has no local interest in this lawsuit

because (1) Plaintiffs have not alleged any meaningful connections between the

---

[9] Plaintiffs' statements about the possibility of having to obtain counsel are
insufficient to tilt the balance.

facts of this lawsuit and Texas; (2) there are no witnesses, documents, or records of either party in this District; and (3) a jury trial would impose a burden on the people in this District who have no relation to the litigation.  (See id. at 4–6.) Plaintiffs counter that this factor should be viewed as neutral in the transfer analysis because "abusive robocalls" occur nationwide; thus, the alleged injury does not create a substantial local interest in any particular district.  (See Dkt. # 13 at 5.)

The Supreme Court has determined that "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947); Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc., 982 F. Supp. 2d 714, 727 (W.D. Tex. 2013).  "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach[.]"  Gulf Oil Corp., 330 U.S. at 509. "The Fifth Circuit also acknowledges this concern is relevant to the § 1404(a) analysis."  Two-Way Media LLC v. AT & T Inc., 636 F. Supp. 2d 527, 539 (S.D. Tex. 2009) (citing Koehring Co. v. Hyde Const. Co., 324 F.2d 295, 296 (5th Cir. 1963)).

The Court finds that this factor weighs in favor of transfer.  Although the dismissed co-plaintiffs in this case are Texas residents, it undisputed that the residents of the Western District of Texas do not have any relevant connection to

the events that gave rise to Piernik's and Tressler's claims.  It is also undisputed that there is no evidence, parties, or witnesses located in the Western District of Texas.  See Two-Way Media LLC, 636 F. Supp. 2d at 539 (considering the lack of evidence, parties, and witness in considering the "local interest" factor).  Apart from this Court presiding over the instant litigation, it is clear that there is no relevant factual connection between the actions giving rise to Piernik's and Tressler's claims and the Western District of Texas.

In light of the foregoing, the Court finds that the residents of the Western District of Texas do not have any relevant connection to the events that gave rise to Piernik's and Tressler's suit.  Thus, the Court finds that this factor weighs in favor of transfer.

### iii.    Familiarity With Applicable Law

The third public interest factor is the transferee court's familiarity with the law that will govern the case.  Volkswagen I, 371 F.3d at 203.  It is undisputed that the Western District of Pennsylvania is well-equipped to apply the federal law that governs this case.  Accordingly, this factor is neutral.

### iv.    Conflict of Law

The final public interest factor is the avoidance of unnecessary problems of conflict of laws or the application of foreign law.  Id.  This case does

23

not require resolving problems in conflicts of law or the application of foreign law. Accordingly, this factor is neutral.

In light of the foregoing, the Court concludes that, on balance, the public interest factors weigh in favor of transfer.

C.     Balance of the Factors

Having considered all appropriate factors, the Court finds that venue is more convenient in the Western District of Pennsylvania.  Because Defendant has shown that it would clearly be more convenient to transfer this case to the Western District of Pennsylvania, the Court **GRANTS** Defendant's request for transfer of venue.  (Dkts. ## 7, 12.)

CONCLUSION

For the above stated reasons, Defendant's Motion to Transfer Venue is **GRANTED**.  (Dkts. ## 7, 12.)  In light of the foregoing, Defendant's Motion to Dismiss and Motion to Stay Discovery are **DENIED AS MOOT** (Dkts. ##7, 17). The above-captioned case shall be **TRANSFERRED in its entirety to the Western District of Pennsylvania, Pittsburgh Division**.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, January 25, 2018.

David Alan Ezra
Senior United States District Judge

24